IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MUNROE,<br>  Plaintiff | : | No. 3:25cv990 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| MOUNT AIRY #1, LLC d/b/a<br>MOUNT AIRY CASINO RESORT<br>  Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

As a newly hired casino surveillance agent at the Mount Airy Casino Resort, Plaintiff Michael Munroe encountered an alleged "free-for-all" when he was moved to the overnight shift. According to Munroe, he worked for an abrasive shift manager, who allegedly harassed the plaintiff after he disclosed his mental health conditions. When Munroe reported the shift manager to the casino's director of surveillance, a human resources investigation was initiated. As a result of the investigation, the plaintiff was terminated from Mount Airy, not the shift manager.

Munroe asserts that Mount Airy violated the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101, *et seq.* when it decided to fire him. In turn, Mount Airy responded to Munroe's employment discrimination complaint with a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons set forth below, Mount Airy's motion will be denied. Munroe's complaint sets forth plausible ADA discrimination and retaliation claims stemming from his termination.

**Background**

Munroe suffers from bipolar disorder, attention deficit hyperactivity disorder, and general anxiety disorder.[1] (Doc. 1, Compl. ¶ 12). According to the complaint, a provider diagnosed plaintiff with these mental health conditions as the result of job-stressors. Munroe alleges that he was diagnosed with these conditions after he encountered two individuals who committed suicide when he was an employee of a different casino. Id. ¶¶ 10, 12. These events and subsequent mental health episodes resulted in the plaintiff resigning from that employment, according to the complaint. Id. ¶ 10.

Thereafter, Munroe sought employment at a different casino, Mount Airy, in Mount Pocono, Monroe County, Pennsylvania. In August 2023, he interviewed for the position of surveillance agent. Id. ¶ 10. During that interview, Robert Olson, Mount Airy's director of surveillance, asked Munroe why he left his prior job. Id. Munroe allegedly told Olson that he resigned due to mental health

---

[1] These brief background facts are derived from plaintiff's complaint. At this stage of the proceedings, the court must accept all factual allegations in the amended complaint as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

2

issues, but he did not tell Olson about his specific diagnoses at that time. Id. ¶¶ 10, 12.

Mount Airy hired Munroe and he began work in September 2023. Id. ¶ 13. In November 2023, Munroe transitioned to working as a surveillance agent on the overnight or "grave" shift. Id. ¶ 15. He reported to at least two shift managers, including Glen McMahon. Id. ¶¶ 14–15. McMahon told Munroe on his first overnight shift that "he had hired and fired 76 employees[.]" Id. at 15. Eventually, Munroe was also fired, but not by McMahon.

As alleged, "[b]y early December [2023], the nighttime working hours, stressful work environment, and a pending divorce began taking a mental toll on" the plaintiff. Id.¶ 18. According to Munroe, these circumstances resulted in difficulties sleeping and concentrating. Id. ¶ 18. Munroe confided in his trainer at Mount Airy who worked as a manager on a different shift. Id. ¶¶ 13–14, 19. Plaintiff explained that he was "struggling with a deterioration in his mental health caused in large part" by McMahon's behavior and "the overall mismanagement on [g]rave shift." Id. ¶ 19. Munroe's trainer advised him to report McMahon to Olson, i.e., the director of surveillance. Id.

According to the complaint, Munroe subsequently explained to Olson that he was "struggling mentally" due to his lack of training and McMahon's poor management. Id. ¶ 20. After Olson told Munroe to "just quit," Munroe asked for

support and advice and disclosed his mental health diagnoses. Id. Olson allegedly backed off his comments about quitting and directed Munroe to speak with McMahon about his mental health. Id. The next day, December 4, 2023, Munroe allegedly met with McMahon and disclosed "everything about his mental health struggles" including working with McMahon on the "grave" shift. Id. ¶ 22.

According to the complaint, Munroe's work situation did not improve. Rather than empathize, McMahon allegedly "went off on a tirade" about Olson. Id. ¶ 23. McMahon also started harassing Munroe about his mental health, mocking the plaintiff and other employees who suffered from mental health conditions. Id. ¶¶ 25–27.

Plaintiff then met with the surveillance department manager, Kevin O'Connor, in January 2024. Id. ¶ 30. Among other issues discussed, Munroe told O'Connor about McMahon's harassment toward him and other agents. Id. Olson walked in on the meeting. Id. ¶ 31. O'Connor and Olson listened to Munroe's complaints about McMahon and concerns about the "grave" shift. Id. Munroe alleges that Olson subsequently referred plaintiff's complaints about McMahon to Mount Airy's human resources ("HR") manager, Susan Menichiello. Menichiello investigated on behalf of the company. Id. ¶¶ 31–32.

During Menichiello's investigation, Olson directed Munroe to write an email detailing everything he shared in the above-discussed meeting with O'Connor. Id.

4

¶ 33. Olson specifically told Munroe to describe his mental health issues and McMahon's harassment. On January 26, 2024, Olson informed plaintiff that he would be moving to day shift. Id. ¶ 34.

Subsequently, on February 1, 2024, Munroe met with Olson and Menichiello. Id. ¶ 35. As alleged, Munroe was directed to recount all the information he previously shared with Olson, including the plaintiff's personal mental health issues and diagnoses, McMahon's harassment of the plaintiff and other employees, and the plaintiff's traumatic experiences at his prior job. Id. ¶ 35. Munroe avers that Menichiello took extensive notes at the meeting. Id.

Less than ten days later, on February 9, 2024, Munroe met with Olson and Menichello again. Id. ¶ 37. Menichiello told the plaintiff that she "discovered some undisclosed 'unethical misconduct' and 'unsubstantiated allegations.'" Id. Menichiello, however, was referring to Munroe, the plaintiff, not McMahon, the alleged harasser. Id. ¶¶ 37–38. Menichiello fired the plaintiff, and he was escorted from the building by Olson. Id. While escorting Munroe from the casino, Olson made comments to the plaintiff suggesting that Olson disagreed with the decisions of Mount Airy.

Based on the above allegations, the complaint asserts two straightforward ADA claims. In Count I, Munroe alleges that he was fired because of his disabilities and replaced by two (2) non-disabled surveillance agents. Id. ¶¶ 47–

5

48. In Count II, Munroe asserts that his firing was in retaliation for complaining about disability-related harassment and for requesting accommodations. Id. ¶ 59.

Mount Airy seeks dismissal of Count I, the discriminatory discharge claim, arguing that Munroe failed to allege that he is disabled for the purposes of the ADA. Mount Airy also moves to dismiss Count II, the retaliatory discharge claim, to the extent that the claim is premised upon a request for a reasonable accommodation. Mount Airy asserts that such a request was not alleged by the plaintiff. Upon review of the complaint, neither argument compels dismissal of plaintiff's claims.

**Jurisdiction**

Plaintiff's claims arise under the ADA. The court thus has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**Standard of Review**

Mount Airy has filed a motion to dismiss for failure to state a claim. To survive a motion to dismiss such as this one, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing

6

Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court generally evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. Oldham v. Pennsylvania State Univ., 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted). The second step involves reviewing the operative pleading and disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual. See Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted). The third step evaluates the plausibility of the remaining allegations. Id.

In evaluating plausibility of the plaintiff's allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. Id. (citations omitted); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). A plaintiff need not establish a prima facie case at the pleading stage in an employment discrimination matter; however, they must allege enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir.

2016) (citations omitted).

**Analysis**

1. **Munroe Sufficiently Alleges a Mental Health "Disability" Under the ADA**

To reiterate, Count I of Munroe's complaint alleges that Mount Airy fired the plaintiff because of his mental health conditions. A crucial element of proof is whether the plaintiff can demonstrate he has a "disability" as that term is defined by the ADA.[2] With the motion to dismiss, Mount Airy challenges whether Munroe has alleged a "disability" under the ADA. Mount Airy argues that the complaint falls short of alleging "a substantial limitation to a major life activity[.]" (Doc. 5, Def. Br. in Supp.). Based upon the broad definitions of "disability" in the ADA, Mount Airy's argument is rejected.

The ADA "prohibits covered entities from discriminating against qualified employees based on their disabilities." Eshleman v. Patrick Indus., Inc., 961 F.3d 242, 245 (3d Cir. 2020) (citing 42 U.S.C. § 12112). Under the ADA, an individual has a "disability" if they: (1) have "a physical or mental impairment that substantially limits one or more" of their "major life activities"; (2) have "a record

---

[2] To prove disability discrimination, a plaintiff must demonstrate that (i) they have a disability within the meaning of the ADA; (ii) they are "otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer[;]" and (iii) they have "suffered an otherwise adverse employment decision as a result of discrimination." Morgan v. Allison Crane & Rigging LLC, 114 F.4th 214, 221 (3d Cir. 2024) (citations omitted).

of such an impairment"; or (3) are "regarded as having such an impairment." Id. (quoting 42 U.S.C. § 12102(1)). Claims arising under the first part of the definition are called "actual disability" claims under ADA case law. Morgan v. Allison Crane & Rigging LLC, 114 F.4th 214, 221 (3d Cir. 2024). Claims stemming from the second part of the definition are called "record of" disability claims. Eshelman v. Agere Sys., Inc., 554 F.3d 426, 437 (3d Cir. 2009). Lastly, the third part of the definition forms the foundation of "regarded as" disability claims. Morgan, 114 F.4th at 223–24.

Munroe's complaint sufficiently alleges an actual disability. Per the allegations, in December 2023, "the nighttime working hours, stressful work environment, and a pending divorce" were aggravating Munroe's bipolar disorder and anxiety. (Doc. 1 ¶ 18). At that time, Munroe alleges he was having difficulty sleeping and concentrating and "struggling with a deterioration in his mental health[.]" Id. ¶¶ 18–19.

As stated above, a person has a "disability" under the ADA if they have "a physical or mental impairment that substantially limits one or more" of their "major life activities." 42 U.S.C. § 12102(1)(A). Sleeping and concentrating are included in the statutory list of major life activities. 42 U.S.C. § 12102(2)(A). Under the law, the term "disability" is to be construed "in favor of broad coverage[.]" 42 U.S.C. § 12102(4)(A). Therefore, the term "substantially limits" is

to be interpreted with Congressional findings and purposes of the ADA Amendments Act of 2008 ("ADAAA"). 42 U.S.C. § 12102(4)(B). With the ADAAA, Congress sought to broaden the scope of protection and the term "substantially limits" after courts had read that term (and others) narrowly.[3] ADA AMENDMENTS ACT OF 2008, PL 110–325, September 25, 2008, 122 Stat 3553. Consequently, the statutory language of the ADA and the case law provide broad coverage of individuals under this particular anti-discrimination law. When all reasonable inferences from the allegations in the complaint are drawn in Munroe's favor, he has sufficiently alleged his actual disability.

The complaint also plausibly alleges that Munroe was "regarded as" having a disability as an employee of Mount Airy Casino Resort. As defined by statute:

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity.*

---

[3] In support of its arguments that Munroe has not alleged that his mental health condition "substantially limits" one or more major life activities, Mount Airy cites numerous cases predating the ADAAA, including Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002) and Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274 (3d Cir. 2012). Toyota prompted the passage of the ADAAA, which broadened the applicability of the ADA. See ADA AMENDMENTS ACT OF 2008, PL 110–325, September 25, 2008, 122 Stat 3553 ("Congress finds that…[Toyota] interpreted the term "substantially limits" to require a greater degree of limitation than was intended by Congress."). McFarlan is a pre-amendments case and does not control adjudications of claims that arose after the effective date of the ADAAA. Morgan, 114 F.4th at 217–18.

42 U.S.C. § 12102(3)(A) (emphasis added). By such terms, " 'the requirements for a prima facie 'regarded as' claim are less demanding' than those for an actual disability claim." Morgan, 114 F.4th at 224 (quoting Mancini v. City of Providence by & through Lombardi, 909 F.3d 32, 46 (1st Cir. 2018)); see also Gibbs v. City of Pittsburgh, 989 F.3d 226, 229 (3d Cir. 2021) ("The test for [a "regarded as" claim] is whether the employer 'perceived' him as impaired, 'whether or not the [perceived] impairment limits or is perceived to limit a major life activity.' ").

Here, by virtue of alleging facts supporting a "discriminatory discharge," Munroe has also satisfied the "regarded as" definition of disability. Specifically, Munroe contends that he experienced discrimination after he disclosed his mental health conditions to supervisors and managers. According to the complaint, plaintiff's shift supervisor, McMahon, began a "weeks-long campaign of harassment" based upon the plaintiff's mental health once learning about those details. (Doc. 1 ¶ 25. According to the plaintiff, McMahon interrupted a casino audit to gossip about the conduct of a cage cashier, who the supervisor said, "used to cut herself and defecate in a litter box." Id. McMahon also forwarded an email to Munroe (previously sent to other managers) in which McMahon "mocked this employee's mental health struggles and attached pictures of scars on her arms[.]" Id. ¶¶ 25–26. Further, McMahon allegedly referenced this employee's "troubling and morbid" journal entries and sent

11

Munroe excerpts of this journal for no other purpose, according to the complaint, but to taunt plaintiff about his own personal mental health conditions. Id. ¶ 26. The complaint also alleges that McMahon "routinely force[d]" Munroe "to watch old security footage of fights, injuries, accidents, and…a death on the [g]aming [f]loor," while purportedly mocking the victims and bragging about himself. Id. ¶ 27. According to Munroe, McMahon engaged in the conduct to harass the plaintiff, not for any legitimate business purpose, once he learned about the plaintiff's mental health conditions. Id.

In addition, Munroe alleges that had a meeting with Mount Airy's HR manager, Susan Menichiello, where plaintiff was asked to recount all of the information he shared with department-level managers and directors about his own mental health issues. Id. ¶ 35. Per plaintiff, Menichiello took exhaustive notes during this meeting. Id. Based on the timeline alleged in the complaint, Munroe was terminated less than ten (10) days later. Id. ¶ 37. When these facts are construed in a light most favorable to Munroe, he has also plausibly alleged that he was terminated after being regarded as disabled. That is, as alleged, Mount Airy fired him after he was candid about his own mental health conditions and how the stressors of McMahon's supervision on the "grave" shift amplified those conditions. These allegations support an inference that Munroe was fired because of his employer's perceptions about his mental health condition.

Because such allegations also support the "regarded as" definition of disability, the motion to dismiss Count I will be denied.

### 2. **Munroe Sufficiently Alleges Two Forms of Protected Activity**

Count II of Munroe's complaint asserts that Mount Airy is liable for retaliatory discharge.[4] Specifically, Munroe claims that his employment was terminated after he: 1) requested a reasonable accommodation in conversations with McMahon and Olson, id. ¶¶ 21–25; and 2) complained about McMahon's disability-based harassment and discrimination to managers and directors, id. ¶¶ 30–35. Mount Airy moves to dismiss the portion of the retaliation claim premised on the alleged request for a reasonable accommodation.[5]

To state a claim for retaliation under the ADA, a plaintiff must allege: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the protected activity and the adverse action. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). Under the law, good faith requests for reasonable accommodations are protected activities sufficient to

---

[4] The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a).

[5] In its reply brief, Mount Airy concedes that Munroe has sufficiently pled a retaliation claim based on his complaints to management about McMahon's alleged disability-related harassment and discrimination. (Doc. 7 at 9).

support an ADA retaliation claim. See Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003); see also Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 188 (3d Cir. 2010).

Furthermore, an "employer must make reasonable accommodations to an employee's 'known' disability." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir. 1999) (citing 42 U.S.C. § 12112(b)(5)(A)). Requests for reasonable accommodation do not need to be in writing, or be made by the employee, and do not need to mention the ADA or formally invoke any "magic words." Id. Rather, the notice must only "make clear that the employee wants assistance for his or her disability." Id.

According to Mount Airy, Munroe failed to allege that he made an appropriate request for a reasonable accommodation. (Doc. 7, Def. Reply Br. at 9). Upon review of the complaint, however, the court will not foreclose Munroe's retaliation claim based upon ostensible requests to Olson and McMahon for reasonable accommodations. (See Doc. 1, Compl. ¶¶ 20–25). A complaint merely has to "nudge" claims "across the line from conceivable to plausible[.]" Twombly, 550 U.S. at 570 (quotation modified). Additionally, Munroe need only give Mount Airy fair notice of his claim and raise the reasonable expectation that discovery will uncover evidence of discriminatory or retaliatory motives. See

Gibbs, 989 F.3d at 230; Martinez v. UPMC Susquehanna, 986 F.3d 261, 267 (3d Cir. 2021).

Munroe's allegations provide Mount Airy with fair notice of a multi-faceted retaliation claim and nudge that claim over the line to plausibility. The complaint maintains that Munroe had numerous conversations with supervisors, directors, and managers about his mental health. The details of these conversations are important and are not before the court. Discovery into those details may reveal retaliation after a reasonable accommodation request by plaintiff, or it may not. The court will be in a better position to evaluate this portion of the plaintiff's retaliation claim if the issue is raised by the defendant again in a motion for summary judgment. Consequently, there is no reason to dismiss the portion of the retaliatory discharge claim in Count II premised upon Munroe's request for a reasonable accommodation.

**Conclusion**

For the foregoing reasons, plaintiff has pleaded sufficient facts to maintain claims for disability discrimination and retaliation under the ADA. Mount Airy's motion to dismiss will be denied. An appropriate order follows.

Date: 1/7/26

BY THE COURT:

_____
JUDGE JULIA K. MUNLEY
United States District Court